[No. 5316.    Decided December 30, 1904.]

## JOHN ESMOND et al., Appellants, v. GILLIES LOGGING AND MERCANTILE COMPANY, Respondent.[1]

CONTRACTS—AGREEMENT FOR SECURITY OF PARTIES FURNISHING SUPPLIES TO LOGGING CAMP—CONSTRUCTION.    Where plaintiffs furnished supplies to a logger, cutting timber upon the lands of, and under contract with, the defendant company, until about two thousand dollars was due them, when, for the purpose of security, a written agreement was entered into whereby the logger authorized the defendant company to pay the "labor claims incurred" in cutting "said timber," and certain other specified amounts, and authorized the payment of any balance, due the logger under the contract, to the plaintiffs from month to month, until their claims were paid, the deduction for the labor claims is not to be confined to current claims, but comprehends all claims for such labor, and does not render the defendant company personally liable, except to the extent of the balance due the logger remaining in its hands.

SAME.    In such case it is not error to receive evidence of the amount of the labor claims incurred and advanced by the defendant company prior to the making of such contract, since they were comprehended therein, and there was no intention to place the defendant in a worse position than it was in before making the contract.

APPEAL—REVIEW.    Findings will not be disturbed when sustained by the evidence.

Apeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 14, 1904, upon findings in favor of the defendants, dismissing, on the merits, an action upon contract, after a trial before the court without a jury.    Affirmed.

*B. G. Cheney,* for appellants.

*J. B. Bridges,* for respondent.

HADLEY, J.—This suit is for the recovery of sums alleged to be due for supplies furnished to a logging camp.

[1]Reported in 78 Pac. 1016.

The firms of Esmond & Esmond and Ninemire & Morgan joined in the action as plaintiffs, and brought the suit against Daniel Gillies and the Gillies Logging & Mercantile Company, a corporation, as defendants. The complaint alleges, that on the 6th day of September, 1902, the said Daniel Gillies entered into an agreement in writing with his co-defendant, the above named corporation, under the terms of which said Gillies agreed to cut and remove the merchantable timber upon certain lands in Chehalis county, belonging to said corporation, and that the latter agreed to pay him certain prices per thousand feet, as specified in the contract, for such cutting and removal; that thereafter said Gillies entered upon the performance of the contract, and that, for the purpose of enabling him to carry out the same, he from time to time obtained from the plaintiffs certain supplies; that payments were made for a portion of the supplies, none of which were made by said Gillies directly, but that all were made by said corporation, and that the latter agreed to pay for them all; that on the 27th day of March, 1903, there was due and owing from the defendants to said firm of Esmond & Esmond the sum of $1,559.15, and to the firm of Ninemire & Morgan the sum of $481.01, aggregating in all the sum of $2,040.16; that on said date the plaintiffs refused to furnish further supplies unless said indebtedness was paid or secured, and that, as security for said indebtedness, and in consideration of obtaining further supplies from the plaintiffs, and to secure the payment therefor, the defendants entered into an agreement in writing with the plaintiffs as follows:

"Whereas Daniel Gillies has contracted with the Gillies Logging & Mercantile Company to cut, log and remove certain timber upon Little North river, and said company in consideration thereof heretofore agreed to

pay him for such services the sum of $3.50 per thousand feet for all fir and spruce timber cut and removed under said contract, and placed in its boom in Preachers Slough, of which amount $2.50 per thousand feet is to be paid when said logs are put in the waters of Little North river; and, whereas, under said contract the company is authorized to pay the labor claims against said logs; and, whereas, the said Daniel Gillies is indebted to Esmond & Esmond of Montesano, for supplies and merchandise in the sum of $1,559.15, and is indebted to Ninemire & Morgan in the sum of $481.01, and will hereafter become indebted to each of said firms on account of merchandise and supplies furnished; and, whereas, the parties are desirous . that said Esmond & Esmond and Ninemire & Morgan shall be secured for said indebtedness and for future indebtedness to be incurred.

"It is therefore agreed, by said Daniel Gillies and said Gillies Logging & Mercantile Company, and said Esmond & Esmond and said Ninemire & Morgan as follows: Said Daniel Gillies hereby authorizes said Gillies Logging & Mercantile Company out of said $3.50 per M feet to pay the actual labor claims incurred in cutting, removing and logging said timber, or getting said logs into said slough, and authorizes said company to pay to the persons entitled thereto a sum of money not exceeding $250 for any month in payment for bills for cable, steel, coal and necessary camp equipment and other proper expenses in running said camp, it being understood that no more than said sum of $250 for any month shall be used for that purpose and also an additional sum of $75 per month for wages to said Gillies will be allowed. The said Daniel Gillies hereby authorizes said company, and said company hereby agrees to pay to said Esmond & Esmond and said Ninemire & Morgan all of the balance remaining from month to month, owing to said Gillies under said contract, until the indebtedness now owing to said Esmond & Esmond and said Ninemire & Morgan and the indebtedness hereinafter incurred shall be fully paid.

"It is further agreed that said Daniel Gillies shall render monthly statement to said Esmond & Esmond and to

said Ninemire & Morgan of the amount of logs put into the waters of Little North river for each respective month, and the amount of logs put into Preachers Slough for each respective month, and the amount of labor claims against said logs, and the amount of bills incurred for each respective month on account of the purchase of cable, steel, coal and other necessary camp equipment."

It is further alleged that, after the making of the above contract, the plaintiffs continued to furnish supplies, for all of which said corporation paid, until on or about October 1, 1903, when it notified plaintiffs that it would not pay for any further supplies, and also refused to pay any part of said sum of $2,040.16. It is averred that there is in the hands of the defendant corporation a sum of money greatly in excess of plaintiffs' claims, after allowing all deductions provided by said contract with plaintiffs, and judgment is demanded for $2,040.16. The defendant corporation answered separately, its co-defendant Daniel Gillies defaulting. The answer admits the contract hereinbefore set out, and alleges that, after making the deductions for payments therein provided, no sum remains in its hands to be applied upon the claims of the plaintiffs. It denies any promise to pay plaintiffs except that contained in said written contract of March 27, 1903. The cause was tried before the court without a jury, and resulted in a judgment dismissing the action as against the defendant corporation. Plaintiffs have appealed.

If the respondent is liable here it must be by virtue of the written contract with appellants noted above. The appellants' complaint shows that the supplies were not furnished to, or purchased by, respondent, but that they were furnished to Daniel Gillies, who had a contract with respondent to cut and remove timber. Respondent cannot, therefore, be made liable unless there exists an

enforcible promise to answer for the debt of Daniel Gillies. The complaint, it is true, alleges an express promise to pay on the part of respondent, but it is not alleged that such promise was in writing, other than as contained in the contract which is set out above. The real controversy, therefore, is over the interpretation that shall be given to said written contract with appellants.

It will be observed that the said contract recognizes the existence of a prior one between Gillies and the logging company, whereby Gillies was to receive $3.50 per thousand feet for all timber placed in respondent's boom in Preachers Slough, of which the sum of $2.50 per thousand feet was to be paid when the logs were placed in the waters of Little North river. It is claimed by appellants that the contract with them contains a promise to pay the indebtedness owing to them, and theretofore incurred by Gillies, out of any balance remaining from what may be coming to him from respondent, for all timber placed in the water, at the rates above named, after making the deductions specified in the contract. And it is further claimed that such deductions relate only to current labor claims and expenses thereafter to accrue.

Respondent, upon the other hand, urges that the contract does not specify such deductions as relating to current labor and expenses thereafter to accrue, but that it comprehends a deduction of the amount necessary to pay all claims for labor in putting all the timber in the water, from the beginning of Gillies' operations under his contract. The trial court adopted the latter interpretation, and we think it was correct under the wording of the contract.

The language used does not, in terms, refer to current labor claims and expenses thereafter to accrue, but

it comprehensively says, "the actual labor claims incurred in cutting, removing and logging said timber." The words "said timber" must refer to the timber Gillies was to cut and remove under his contract, and cannot be said to refer alone to what should be thereafter cut and removed. The logging company, by its contract with Gillies, was authorized to pay the labor claims, and it was thus protected in such advancements to the extent, at least, of what should be coming to Gillies for logs actually placed in the water. It therefore seems manifest to us that it was not intended by the contract with appellants to place the logging company in a worse position than it was in before, whereby it might become liable for greater sums than those provided by the logging contract. It rather seems to have been intended, merely, to bind the logging company to pay to appellants, to the extent of their claims, any balances remaining in its hands under the logging contract, instead of paying the same to Gillies. It was in effect an order, made by Gillies upon respondent, to pay certain balances, which order was accepted by respondent.

It is assigned that the court erred in admitting evidence as to any indebtedness existing between Gillies and the respondent at the date of the aforesaid contract with appellants, and incurred prior thereto. It is the position of appellants that such evidence was immaterial, for the alleged reason that the contract does not authorize taking into account indebtedness for labor claims theretofore accrued. The purpose of the testimony was to show that respondent had, before the time of said contract, advanced large sums to Gillies, which had been applied upon payment of labor claims in his behalf, and that respondent is entitled to be reimbursed to the extent thereof, for the reason that the contract

with appellants provides that labor claims shall be first paid. Under the interpretation given to the contract below, and also by this court as hereinbefore stated, it authorizes the payment first of all labor claims from the beginning of Gillies' logging contract with respondent, and including all claims thereafter accruing. The contract states, upon its face, that, under respondent's logging contract with Gillies, it was "authorized to pay the labor claims against said logs." If, then, it made such payments to the laborers directly as their claims accrued, it became in effect an assignee of their claims, and was entitled to be substituted in their places, and receive the payments provided by the contract with appellants. It therefore became material to ascertain the extent of respondent's advancements, and also the amount of logs placed in the water, in order to determine whether respondent was still indebted to Gillies under its logging contract with him, and, if so, what amount still remained in its hands that could be applied to appellants' claims. We therefore think the court did not err in admitting the testimony.

Errors are assigned upon the findings of the court. The court found that the advancements made by the respondent to Gillies were for the payment of labor and certain camp expenses, the larger part being for payment of labor. It was also found that the advances far exceeded the amounts coming to Gillies under his logging contract. The conclusion was, therefore, reached that nothing remains in respondent's hands to be applied upon appellants' claims. The evidence is such as we think sustains the findings, and we shall therefore not disturb them.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.